IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAMS COLLINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-23-0042 |
| | * | |
| MERRICK B. GARLAND, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendants Merrick B. Garland and Steven Dettelbach (the "Federal Defendants") and Anthony G. Brown and Roland L. Butler, Jr. (the "State Defendants") have moved this Court in respective motions to dismiss Plaintiff William Collins, III's ("Plaintiff") Complaint. ECF Nos. 1, 21, 22.[1] Plaintiff responded in opposition to Defendants' Motions and moved the Court for summary judgment. ECF No. 25. As directed by the Court, the parties then filed supplemental briefing. ECF Nos. 30, 33, 34, 35. After considering all parties' Motions, the responses thereto, and the supplemental briefing, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendants' Motions are GRANTED and Plaintiff's Motion is DENIED.

---

[1] On January 9, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 6. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 16.

## Factual and Procedural Background

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765–66 (4th Cir. 2022). Plaintiff is a resident of Frederick County, Maryland. ECF No. 18 at ¶ 8. On June 7, 1997, Plaintiff was pulled over while driving in Frederick County and then fled from his vehicle on foot. *Id.* at ¶ 10. Plaintiff was later apprehended and charged with Driving While Intoxicated (DWI) under § 21-902(b) of the Maryland Transportation Article and Resisting Arrest. *Id.* On January 23, 1998, Plaintiff pled guilty to both charges. *Id.* On December 21, 2001, Plaintiff was charged with a second DWI, as well as Possession of a Controlled Dangerous Substance ("CDS Possession") pursuant to the current iteration § 5-601 of the Maryland Criminal Law Article. *Id.* at ¶ 11. Plaintiff contends that his Resisting Arrest conviction has been removed from State public records (*Id.* at ¶ 13), but that his CDS Possession conviction is ineligible for expungement because it arose out of the same incident as an alcohol-related traffic conviction. *Id.* at ¶ 14.

On June 19, 2022, Plaintiff applied to the Maryland State Police for a Handgun Qualification License ("HQL") pursuant to §§ 5-117 and 5-117.1 of the Maryland Public Safety Article. *Id.* at ¶ 15. On June 30, 2022, Plaintiff's application was denied based on his Resisting Arrest and CDS Possession convictions. *Id.* at ¶ 18. The denial was upheld by the Maryland Office of Administrative Hearings. *Id.*

On January 9, 2023, Plaintiff filed his initial Complaint. In an Amended Complaint filed March 27, 2023, Plaintiff asserted that he is now a "responsible, law-abiding citizen"

2

with no "history of violent behavior, conduct, or convictions that would…suggest that he would pose any more danger to the community by possession of a firearm than would any other law-abiding U.S. citizen." *Id.* at ¶ 21. On April 4, 2023, the Federal Defendants and the State Defendants filed Motions to Dismiss. ECF Nos. 21, 22. The Federal Defendants moved to dismiss Count III of the Complaint, while the State Defendants moved to dismiss the Complaint in its entirety. *Id.* Plaintiff responded in opposition on April 24, 2023, and additionally filed a Motion for Summary Judgment, to which both Defendants responded in opposition on May 8, 2023. On June 8, 2023, in light of the *en banc* decision in *Range v. Att'y Gen.*, 69 F.4th 96 (3rd Cir. 2023), the Court directed the parties to file supplemental briefing.

## DISCUSSION

**Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

**Analysis**

Plaintiff asserts that the application of §§ 5-133(b)(1), 5-144, and 5-205(b)(1) of the Maryland Public Safety Article and 18 U.S.C. § 922(g)(1) against him violates his Second and Fourteenth Amendment rights. ECF No. 18 at ¶¶ 26, 30, 34. He seeks declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, et seq. (Count I) and 42 U.S.C. § 1983 (Counts II & III), requesting (1) that the Court declare the aforementioned statutes unconstitutional as applied to him and (2) that the Court enjoin the State and Federal Defendants from enforcing the statutes against him. *Id.* The Defendants argue that Plaintiff has failed to state claims for relief as to all claims. *See* ECF Nos. 21, 22. The Court agrees with Defendants.

<u>Plaintiff's Challenge to §§ 5-133(b)(1), 5-144, and 5-205(b)(1) of the Maryland Public Safety Article (Counts I & II)</u>

In Counts I and II of the Amended Complaint, Plaintiff argues that "it is unconstitutional to apply against him, personally, the firearms prohibitions contained in §§ 5-133(b)(1), 5-144, and 5-205(b)(1) of the Maryland Public Safety Article and deny him his right to possess a handgun or any other firearm, regulated or unregulated, for use in self-defense, sport, or any other lawful purpose." ECF No. 18 at ¶¶ 26, 30. Plaintiff brings

only this "as-applied" challenge, and does not challenge the constitutionality of the statutory provisions on their face. *Id.*; *see U.S. v. Jackson*, No. ELH-22-141, 2023 WL 2242873, at *2–3 (D.Md. Mar. 3, 2023) (In contrast to a facial challenge, "an as-applied challenge is 'based on a developed factual record and the application of a statute to a specific person[.]'" (citing *Richmond Med. Ctr. For Women v. Herrring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc))). The State Defendants contend that "Plaintiff fails to state a claim upon which relief can be granted…because he is not a law-abiding citizen entitled to the protections of the Second Amendment." ECF No. 18.

The Second Amendment to the U.S. Constitution guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST., amend. II. In recent decades, the Supreme Court has further delineated the extent of the Second Amendment's protections and has consistently upheld the disarmament of convicted felons. *See District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 778 (2010); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). In *Heller,* the Supreme Court held that the Second Amendment protects "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. (emphasis added). The Court further stressed that "nothing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill[.]" *Id.* at 626. As with other fundamental rights, "the right secured by the Second Amendment is not unlimited." *Id.*

In *McDonald*, the Supreme Court held that the Second Amendment is applicable to the states pursuant to the Due Process Clause of the Fourteenth Amendment. 561 U.S. at

5

778. And, it "again made clear that the Second Amendment permits 'reasonable firearms regulations.'" *Jackson*, 2023 WL 2242873, at *3 (quoting *Heller*, 561 U.S. at 785).

Following *Heller* and *McDonald*, the federal appellate courts, including the Fourth Circuit, implemented a "two-step" approach to "assess the constitutionality of firearms regulations, applying strict or intermediate scrutiny and conducting a means-ends analysis to determine whether the state's interest in a regulation was sufficient to overcome whatever burden the law placed on an individual's Second Amendment right." *Jackson*, 2023 WL 2242873, at *3; *see also U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). However, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022), the Supreme Court rejected the two-step approach. It instructed that:

> To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

(internal citations omitted).

In applying this new test, "[a] court must first determine whether 'the Second Amendment's plain text covers an individual's conduct.'" *Jackson*, 2023 WL 2242873, at *3 (quoting *Bruen*, 142 S. Ct. at 2126). "If it does not, the analysis ends, and the government's regulation is valid. However, if the conduct at issue is covered by the Amendment's text, the conduct is presumed protected," and the government must demonstrate whether the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id.*

6

Courts have been divided since *Bruen* as to whether its holding provides support for or undermines the longstanding theory that the Second Amendment only protects law-abiding citizens' right to bear arms. *See Range*, 69 F.4th at 103 ("[W]e reject the Government's contention that only law-abiding, responsible citizens are counted among the people protected by the Second Amendment." (internal quotations omitted)); *but compare with Cusick v. U.S. Department of Justice*, No. TDC-22-1611, 2023 WL 5353170 (D.Md. Aug. 18, 2023) ("While *Bruen*...expanded the right to include possession outside of the home for self-defense, it cannot fairly be read to have expanded the Second Amendment right to non-law-abiding citizens."); *and U.S. v. Jackson*, 69 F.4th 495, 502–03 (8th Cir. 2023) (holding that *Bruen* reaffirmed that the Second Amendment right is subject to reasonable, well-defined restrictions, such as prohibitions on the possession of firearms by felons.") (internal citations omitted)).

I agree with the courts that have concluded that the Second Amendment only extends its protections to law-abiding citizens. *See U.S. v. Costianes*, No. JKB-21-0458, 2023 WL 3550972 at *4 (D.Md. May 18, 2023). It is clear from *Bruen* that the Supreme Court did not intend felons to be among "the people" whose conduct the Second Amendment protects. *See U.S. v. Lane*, No. 3:23cr62 (RCY), 2023 WL 5663084, at *8 (D.Md. Aug. 31, 2023). Indeed, the Court takes care to describe the petitioners, for whom the Court found, as "*law-abiding*, adult citizens." *Bruen*, 142 S. Ct. at 2125 (emphasis added). It further declares that the Second Amendment "elevates above all other interests the right of *law-abiding, responsible citizens* to use arms" for self-defense. *Id.* at 2131

(emphasis added) (quoting *Heller*, 554 U.S. at 635). "Considering *Bruen*'s constant qualification that its analysis operates within the context of 'law-abiding, responsible citizens,' the dicta in *Heller* and *McDonald* still define the outer bounds of 'the people' who may enjoy an uninhibited right to bear arms under the Second and Fourteenth Amendments." *U.S. v. Riley*, 635 F. Supp. 3d 411, 424–25 (E.D. Va. 2022).

Having settled that the Second Amendment only protects law-abiding citizens, applying *Bruen* to Plaintiff's challenge to the firearms prohibitions at issue requires the Court to make a determination as to "(1) whether the Second Amendment's plain text covers the plaintiff's potential conduct and, if so, (2) whether the defendants have demonstrated that the regulation at issue here is consistent with the Nation's historical tradition of firearm regulation." *Campiti v. Garland*, No. 3:22-cv-177 (AWT), at *2 (D. Conn. Jan. 10, 2023).

Plaintiff's potential conduct is the possession of a regulated firearm, despite his previous convictions. Under § 5-133(b)(1), an individual in Maryland may not possess a regulated firearm, such as a handgun, if the person "has been convicted of a disqualifying crime." A "disqualifying crime" under the statute means: "(1) a crime of violence;(2) a violation classified as a felony in the State; or (3) *a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.*" § 5-101(g) (emphasis added). In the Amended Complaint, Plaintiff acknowledges that he has been convicted of both Resisting Arrest and CDS Possession. *See* ECF No. 18 at ¶¶ 10–18. At the time of Plaintiff's conviction in 1998, Resisting Arrest was a common law offense; typically, the

8

only limitation on punishments for common law offenses without statutory penalties is the prohibition against cruel and unusual punishments in violation of the Eighth Amendment. *See State v. Huebner*, 305 Md. 601, 608 (1986). In 2004, the Maryland General Assembly codified the crime of Resisting Arrest and made it subject to imprisonment not exceeding 3 years. *See* § 9-408(c). In 2001, Plaintiff was convicted of CDS Possession, which was at the time punishable by a maximum sentence of four years imprisonment. *See* Md. Code, Article 27 § 287 (repealed by Acts of 2002). A first time CDS Possession offense is now subject to imprisonment not exceeding 1 year. *See* Md. Code § 5-601. Plaintiff is thus barred from owning a firearm under § 5-101(g) of the Maryland Public Safety Act, as he has been convicted of a misdemeanor—CDS Possession—that carried a statutory penalty of more than two years at the time of his conviction.

I find that the plain text of the Second Amendment does not cover Plaintiff's potential conduct, and that he has failed to sufficiently allege that he falls within the category of law-abiding citizens entitled to Second Amendment protections. *See Hamilton v. Pallozzi*, 848 F.3d 614, 624 (4th Cir. 2017). Firearms prohibitions, such as those at issue here, are included within a class of regulatory measures that are presumptively lawful under *Heller*. *See id.* Thus, in order to rebut this presumption of lawfulness, and successfully state a claim upon which relief can be granted, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Id.* (quoting *U.S. v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012)). Plaintiff is unable to demonstrate such circumstances. His theory is that he is a "responsible, law-abiding United States citizen who has no history of violent

9

behavior or any other conduct that would suggest that he poses a danger to the community should he possess a firearm." ECF No. 18 at ¶ 24.

This is insufficient. Plaintiff emphasizes the nonviolent nature of his crimes, but it is of little matter. "[C]ourts in this Circuit and elsewhere have repeatedly rejected Second Amendment challenges to disarmament statutes brought by felons with nonviolent offenses of conviction." *Hamilton*, 165 F.Supp.3d at 327 (holding that a Maryland resident convicted of felony credit-card theft, forgery, and fraud was not an average, law-abiding, responsible citizen, and granting defendant's motion to dismiss); *see also U.S. v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) (We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment.").

I find that Plaintiff has failed to plausibly allege that his conduct is covered by the Second Amendment's plain text. Defendants' Motions to Dismiss are GRANTED as to Counts I and II.

Plaintiff's Challenge to 18 U.S.C. § 922(g)(1) (Count III)

In Count III of the Amended Complaint, Plaintiff argues that "it is unconstitutional to apply against him individually the provisions of 18 U.S.C. § 922(g)(1) and deny him his right to possess a handgun or any other firearm, regulated or unregulated, for use in self-defense, sport or any other lawful purpose." ECF No. 18 at ¶ 34.

18 U.S.C. § 922(g)(1) provides that:

> [i]t shall be unlawful for any person...*who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year*... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

(emphasis added).

Plaintiff has been convicted of a crime that is punishable by imprisonment for a term exceeding one year and is thus subject to § 922(g)(1)'s prohibition. His argument as to why § 922(g)(1) is unconstitutional as applied to him follows the same failed logic as his argument regarding the state law provisions. He again contends that he is a "rehabilitated, responsible, law-abiding United States citizen who has no history of violent behavior or any other conduct that would suggest that he poses a danger to the community should he possess a firearm." ECF No. 18 at ¶ 33. However, as detailed above, Plaintiff's previous criminal convictions exclude him from the category of law-abiding citizens who are entitled to the protections of the Second Amendment. I find that Plaintiff has failed to plausibly allege that the plain text of the Second Amendment covers his potential conduct, and Defendants' Motions to Dismiss are GRANTED as to Count III.

<u>The Challenged Statutes are Consistent with the Nation's Historical Tradition of Firearm Regulation</u>

Because I have found that Plaintiff has failed to plausibly allege that the plain text of the Second Amendment covers his potential conduct as to all Counts, there is no need to proceed to *Bruen*'s second step and determine whether the challenged statutes are consistent with the Nation's historical tradition of firearm regulation. *See Bruen*, 142 S. Ct. at 2127. However, assuming *arguendo* that Plaintiff had met his burden to prove he was a

11

law abiding citizen, Plaintiff's challenges would still fail because the contested statutes pass muster.

In *Bruen*, the Court stated that its new test would require "courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. It cautioned that "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 2132 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). Without providing an "exhaustive survey of the features that render regulations relevantly similar," the Court did offer two baseline metrics—courts should consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. I find that the modern felon disarmament statutes that Plaintiff challenges have historical analogues in "how" and "why" they burden Second Amendment rights.

"History shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people." *Jackson*, 69 F.4th at 502. And as the Fourth Circuit has noted, "[m]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *U.S. v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) (quoting *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010)). Early examples include "[r]estrictions on the possession of firearms…[in] England in the late 1600s, when the government disarmed non-Anglican Protestants who refused to

12

participate in the Church of England." *Jackson*, 69 F.4th at 502 (citing Joyce Lee Malcom, *To Keep and Bear Arms: The Origins of an Anglo-American Right* (1994)). In revolutionary America, "Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty." *Id.* at 503. These historical prohibitions provide the requisite analog for our modern policy of disarming those who have committed serious crimes. Throughout our Nation's history, legislatures have sought to prohibit those deemed reasonably dangerous from possessing firearms. "Analogical reasoning requires only…a well-established and representative historical analogue, not a historical twin." *Bruen*, 142 S.Ct. at 2133. Therefore, I find that, even if Plaintiff had stated a claim upon which relief could be granted, his claim would likely fail to pass the second *Bruen* step, as the challenged statutes are consistent with our historical tradition of firearm regulation.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motions (ECF No. 21 and 22) are GRANTED. Thus, Plaintiff's Motion for Summary Judgment (ECF No. 25) is DENIED. A separate Order will follow.

Date: 20 October 2023

A. David Copperthite
United States Magistrate Judge